FOX, P. J.
 

 This is a suit in equity to impose a constructive trust upon any property that defendant may receive from the estate of her deceased husband, Edgar G. Harkness, either under his will or as his widow. Defendant’s demurrer was sustained without leave to amend. Plaintiff has appealed from the ensuing judgment.
 

 Plaintiff and his brother, Harvey, are the only children of Edgar G. Harkness who passed away May 20, 1960. Defendant is his widow. Plaintiff and his brother are executors of decedent’s will which was executed on April 10, 1960. The estate is in process of probate and will soon be ready for distribution. Decedent’s first wife, with whom he had lived for nearly fifty years, died in July 1952. After her death Harkness continued to live at the family home in Beverly Hills, employing various housekeepers and maids to take care of the home.
 

 Sometime prior to August 1958, defendant was employed by Harkness as a day maid. In August of that year she became a resident housekeeper and maid and was furnished with room and board and paid some $200 per month in wages. In January 1960 Harkness contracted pneumonia. He was then 78 years of age. The illness affected him very severely, weakened him physically and made him more dependent on other people; especially on the defendant. As a result of this illness he became “frightened, lonely and confused.” He had an intense fear of being hospitalized. Realizing his condition and taking advantage of her regular association with him and by promising him constant care, attention and devotion, she induced him to marry her on April 10, 1960, at Las Vegas, Nevada, in order that she might be in a position to get a portion of his estate. Prior to this marriage,
 
 *512
 
 decedent had executed a will leaving his estate to his two sons and grandchildren. However, immediately following the marriage ceremony defendant induced Harkness to execute a new will, holographic in form. In it Harkness made ‘‘ three relatively minor specific bequests to his grandchildren.” He bequeathed to defendant one-third of the residue of his estate; the other two-thirds going to his two sons, equally. Approximately five weeks later (May 20, 1960) Harkness died. The will of April 10, 1960, was admitted to probate, plaintiff and his brother being appointed executors.
 

 Plaintiff further alleges that as a result of said will defendant will receive “an unconscionable benefit (something like $200,000.00) after only five weeks of marriage” and that he and his brother will be ‘ ‘ deprived of a considerable portion of the estate because of the undue influence and fraud practiced by defendant over Edgar G. Harkness.”
 

 Plaintiff affirmatively alleges that “At the time of said marriage and at the time said will was made, Edgar G. Harkness was not of unsound mind.” Plaintiff then points out in his complaint that if the will were set aside, defendant would receive as an heir approximately the same amount as she would under the will. Therefore, he alleges, his only recourse is to appeal to equity for a declaration that any interest of defendant in decedent’s estate is that of a constructive or involuntary trustee for plaintiff and his brother, and that the share devised to her in said will be distributed to plaintiff and his brother Harvey in equal shares.
 

 There is no allegation that the marriage was not valid. Also, there is no allegation that either plaintiff or his brother filed any contest to the probate of the will, or that defendant committed any extrinsic fraud that prevented them from contesting the probate of the will. On the contrary they are the executors and in a sense vouching for the integrity of the instrument through whose provisions they are administering the estate.
 

 Section 22, Probate Code, provides, in material part: “A will or part of a will procured to be made by duress, menace, fraud or undue influence may be denied probate; ...” Section 370, Probate Code, provides for the contest of a will before probate. Section 371, Probate Code, provides that in such a contest a court or jury may hear and determine “Any issue of fact involving the competency of the decedent to make a last will and testament, the freedom of the decedent at the time of the execution of the will from duress, menace, fraud,
 
 *513
 
 or undue influence, the due execution and attestation of the will, or any other question substantially affecting the validity of the will, ...”
 

 It is apparent that these sections of the Probate Code afforded plaintiff the right to file a contest before probate and to present any evidence of fraud or undue influence that was practiced on the decedent by defendant. Plaintiff did not avail himself of his remedy to contest the validity of his father’s will. In his complaint he states that “said will was duly admitted to probate”, and in his brief he concedes that “no attack is made upon the validity of the will.” Absent allegations showing extrinsic fraud,
 
 [1]
 
 what is plaintiff’s position in this matter? The answer is found in the statement of the court in
 
 Tracy
 
 v.
 
 Muir,
 
 151 Cal. 363 [90 P. 832, 121 Am.St.Rep. 117], at p. 372: “By the offer of the will for probate, the proponents tender to the world the issue as to its genuineness. Any person interested may appear and contest the instrument so offered upon various grounds, including all grounds substantially affecting its validity or the question of its due execution. Failing to appear and contest before probate, the right exists for a full year after probate.
 
 [2]
 
 One who must be held to have had actual notice of the proceedings in time to make his contest, and who fails to take advantage of the opportunity afforded of opposing the will by appearing and contesting within the time allowed by law, must, at least unless he can be held to have been prevented from so appearing and contesting by some fraud of those procuring the probate, be held concluded by the decree as to any matter concerning which he could have obtained relief by a contest. ’ ’ This language was quoted with approval in
 
 San Diego Trust etc. Bank
 
 v.
 
 Heustis,
 
 121 Cal.App. 675, 682 [10 P.2d 158], Additional light is shed upon the question by Mr. Justice Bradley’s opinion in the Broderick will case, 88 U.S. (21 Wall.) 503 [22 L.Ed. 599]. Our Supreme Court in
 
 Langdon
 
 v.
 
 Blackburn,
 
 109 Cal. 19 [41 P. 814] quoted (p. 25) the following from that opinion: “ ‘The question recurs, Do the facts stated in the present bill lay sufficient ground for equitable interference with the probate of Broderick’s will, or for establishing a trust against the purchasers of his estate in favor of the complainants ? It needs no argument to show, as
 
 *514
 
 it is perfectly apparent, that every objection to the will or the probate thereof could have been raised, if it was not raised, during the proceedings instituted for proving the will, or at any time within a year after probate was granted ;
 
 [3]
 
 ... In such a case a court of equity will not interfere, for it has no jurisdiction to do so. The probate court was fully competent to afford adequate relief.' ”
 

 Plaintiff, who was appointed one of the executors, obviously had actual notice of the proceedings and had or could have procured sufficient time in which to contest the probate of the will on the grounds of fraud and undue influence. But he failed to file any contest and in his complaint says the “will was duly admitted to probate.” If the will was produced by undue influence or fraud on the part of the defendant, those questions could have been raised and determined during the proceedings for proving the will. Having failed to take any such steps at that time or within six months thereafter (Prob. Code, § 380), plaintiff must be held concluded from again raising the issues of fraud and undue influence on the part of defendant.
 
 (Tracy
 
 v.
 
 Muir, supra; San Diego Trust etc. Bank
 
 v.
 
 Heustis, supra; Langdon
 
 v.
 
 Blackburn, supra.)
 
 Plaintiff, therefore, has failed to make any showing that would justify equity in declaring defendant an involuntary or constructive trustee of any property she may receive under decedent’s will.
 

 The eases relied on by appellant are not in point.
 
 Zaremba
 
 v.
 
 Woods,
 
 17 Cal.App.2d 309 [61 P.2d 976], was a case where the defendant was guilty of extrinsic fraud in securing probate of a will, where it appeared that plaintiff, a brother and heir of decedent, did not learn of the will and its probate until more than six months had elapsed, and the complaint alleged that defendant knowingly and falsely stated in the petition for probate that there were no heirs of the deceased in order to prevent knowledge of the will and its probate being acquired by the decedent’s heirs. In the instant ease the heirs not only had notice of the will and the probate proceedings but actually espoused the will at those proceedings. It is manifest therefrom that defendant was not guilty of extrinsic fraud as in the
 
 Zaremba
 
 case.
 

 Brazil
 
 v.
 
 Silva,
 
 181 Cal. 490 [185 P. 174], is also clearly distinguishable. In that case the defendant prevented the revocation of a valid will by falsely representing that an
 
 *515
 
 envelope which was destroyed
 
 animo revocandi
 
 contained the will when in fact it did not. Again in that case, extrinsic fraud is involved and probate of the will could not have been prevented. In the case at bench we are not concerned with extrinsic fraud, but rather fraud is alleged to be in the execution of the will. This clearly could have been determined at the probate proceeding and therefore cannot now be raised.
 

 In
 
 Estate of Walker,
 
 160 Cal. 547 [117 P. 510, 36 L.R.A. N.S. 89], the court held that a will which was discovered after a final decree of distribution could, nevertheless, be admitted to probate. Again this fact could not have been raised at the original proceedings and therefore, as demonstrated
 
 supra,
 
 that case is clearly distinguishable from the instant case and in no way aids plaintiff’s position.
 

 It will be recalled that “ [t] he validity of the marriage is not contested.” It therefore follows that if plaintiff had successfully contested his father’s will defendant nevertheless would have been entitled to one-third of his estate (slightly more than she will receive under the will) by reason of the provisions of section 221, Probate Code.
 
 [4]
 
 The only exception to the provisions of this section is set forth in section 258 of the Probate Code, which provides that a person guilty of murder or voluntary manslaughter is not entitled to succeed to the estate of the victim. In
 
 Estate of Daniels,
 
 120 Cal.App.2d 284 [260 P.2d 991], it appears that Mrs. Daniels was convicted of a criminal offense in connection with her husband’s death. But it was held that the offense of which she was convicted did not come within the provisions of section 258 as it then read.
 
 [5]
 
 Appellants, however, sought to “invoke the broader ground that ‘No one can take advantage of his own wrong’ (Civ. Code, § 3517) and in that connection stress questions of morality and public policy.” In answering these questions the court adopted this language from
 
 Estate of Kirby,
 
 162 Cal. 91 [121 P. 370, Ann. Cas. 1913C 928, 39 L.R.A. N.S. 1088]: “ ‘Whether this accords with natural
 
 *516
 
 right and justice is a question upon which we cannot enter. The right of inheritance in this state does not depend upon the ideas of court or counsel as to justice and natural right. The entire matter is in the control of the legislature and depends wholly upon the provisions of the statute, regardless of our notions of natural right and justice. [Citations.]’ ” The court further observed, quoting from
 
 Estate of Scott,
 
 90 Cal.App.2d 21 [202 P.2d 357]: “ ‘The right of inheritance . . .
 
 as well as the right of testamentary disposition
 
 are entirely within the' control of the state legislature and are subject only to the conditions prescribed by such body [citations].’ ” (Emphasis by the court.) In the instant case plaintiff concedes that “ [i]n the strict forum of law she [defendant] is impregnably established” but he argues: “Morally and ethically her position is untenable and indefensible. ’ ’ This argument is adequately answered by the above quotations from the
 
 Daniels
 
 case. Obviously the intestacy laws of this state cannot be" circumvented because the marriage is of short duration and the inheritance quite substantial.
 

 The judgment is affirmed.
 

 Ashburn, J., and Herndon, J., concurred.
 

 A petition for a rehearing was denied August 2, 1962, and appellant’s petition for a hearing by the Supreme Court was denied September 5, 1962.
 

 [1]
 

 Plaintiff does not allege any facts constituting extrinsic fraud..
 

 [2]
 

 The statute as it now reads provides for a period of six months (Prob. Code, $ 380).
 

 [3]
 

 See fn. 2.
 

 [4]
 

 The pertinent part of that section reads; “If the decedent leaves a surviving spouse, and more than one child living or one child living and the lawful issue of one or more deceased children, the estate goes one-third to the surviving spouse and the remainder in equal shares to his children and to the lawful issue of any deceased child, by right of representation; . . .’’
 

 [5]
 

 Mrs. Daniels was convicted of manslaughter but at that time section 258 only excluded a person convicted of murder from succeeding to any portion of the victim’s estate. Voluntary manslaughter was added to the section by the statutes of 1955.